UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CLINT ARTHUR, individually and on behalf
of a class of similarly situated persons,

                Plaintiff,                Case No.:    1:10-mc-0612 (ARR)

    -against-


LOUIS VUITTON NORTH AMERICA, INC.,
a Delaware corporation; LOUIS VUITTON
MALLETIER, S.A., a French corporation,
and DOES 2 through 10, inclusive,

                Defendants.
-----------------------------------------------------------------x


## **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL**


CARUSO GLYNN, LLC
53-04 193rd STREET
FRESH MEADOWS, NEW YORK 11365
TELEPHONE: (718) 570-3338
FACSIMILE: (718) 767-2474
e-mail to lglynn@carusoglynn.com
www.carusoglynn.com


Of Counsel:   Daniel Engel, Esq.

I.  INTRODUCTION

With this motion, Plaintiff Clint Arthur ("Arthur") asks this Court to order third-party Kaikai Kiki Co. LTD ("Kaikai Kiki") to comply with the *SUBPOENA TO TESTIFY AT A DEPOSITION OR TO PRODUCE DOCUMENTS IN A CIVIL ACTION* (the "Kaikai Kiki Subpoena")1.  Specifically, Arthur asks the Court to order Kaikai Kiki to:

1. Designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf about matters nos. 6, 9, 10, 13-23, 25, 28-31, 62, 64, 66, 68, 70, 72, 75-77 & 79 (the "*Matters*") listed in the *Kaikai Kiki Subpoena*, and
2. Bring to the deposition the documents, electronically stored information, or objects which were identified in requests for production nos. 1-27, 39-52 & 54 (the "*Requests*").
3. Pay to Arthur's counsel an amount which will compensate them for the expense incurred in bringing this motion.

I.  PROCEDURAL BACKGROUND

The *Kaikai Kiki Subpoena* was served by personal delivery on June 24, 2010 at Kaikai Kiki's corporate offices located in this District.  Engel Decl. ¶3 & Exhibit B.  On June 25, 2010, Arthur served a formal Notice of Deposition of Kaikai Kiki on the parties to this action.  Engel Decl. ¶4 & Exhibit C.

By letter dated July 6, 2010, Kaikai Kiki's counsel flatly stated that Kaikai Kiki would not designate and produce for deposition <u>any</u> of its officers, directors, managing agents, or other persons who consent to testify on its behalf about the matters which were set forth in the *Kaikai Kiki Subpoena* because "[t]he topics listed for testimony in the [*Kaikai Kiki Subpoena*] cannot possibly be relevant to the issues that remain in your lawsuit."  At no time thereafter did Kaikai Kiki ever offer to designate and produce anyone for deposition in compliance with the *Kaikai Kiki*

---

1 A true and correct copy of the *Kaikai Kiki Subpoena* is found as Exhibit A to the Declaration of Daniel E. Engel served and filed concurrently herewith (hereinafter just "Engel Decl.")

*Subpoena*. Engel Decl. ¶5 & Exhibit D.

Further, on July 6, 2010, Kaikai Kiki served a 23-page document entitled *KAIKAI KIKI CO., LTD'S OBJECTIONS TO SUBPOENA TO PRODUCE DOCUMENTS IN A CIVIL ACTION SERVED BY PLAINTIFF* (the "*Written Objections*").   Engel Decl. ¶ & Exhibit E. The *Written Objections* consisted of the following "general objections" which Kaikai Kiki stated "are applicable to many or all of the requests made in the Subpoena" and which Kaikai Kiki asserted "to preserve applicable objections":

> Kaikai Kiki objects to the categories and requests contained in the Subpoena to the extent they seek documents or electronically stored information that are protected by the attorney-client privilege or constitute attorney work product, or seek production of documents that violate Kaikai Kiki's right to privacy.  Kaikai Kiki further objects to the categories and requests contained in the Subpoena on the basis that the information sought is not relevant to the claims alleged in the Plaintiff's Complaint and any amendments thereof, thereby rendering the Subpoena burdensome and oppressive.  Kaikai Kiki further objects to the categories and requests contained in the Subpoena on the basis that they are overbroad and not reasonably calculated to lead to the discovery of admissible evidence, thereby rendering the Subpoena burdensome and oppressive.

As to each of these "general objections", Kaikai Kiki stated it "is a continuing objection which Kaikai Kiki incorporates into each and every one of its responses, to the extent applicable."

In addition to the "general objections" discussed above, Kaikai Kiki asserted the exact same specific objection to Requests Nos. 1-11, 12-27, 39-40, 46 & 48-52:

> Kaikai Kiki reasserts the general objections stated above as though set forth at length.  In addition, Kaikai Kiki specifically objects to this request on the basis that it is vague and overbroad as to its scope, and seeks documents and information that are not relevant to this action, which renders the request burdensome and oppressive. Kaikai Kiki further objects to this request on the basis that it is not reasonably calculated to lead to the discovery of admissible evidence.

And, Kaikai Kiki asserted the following specific objection to compliance with Requests Nos. For Requests Nos. 41-45, 47 & 54:

> 9  Kaikai Kiki reasserts the general objections stated above as though set forth at
> 10 length. In addition, Kaikai Kiki specifically objects to this request on the basis that it
> 11 is vague and overbroad as to its scope, and seeks documents and information that are
> 12 not relevant to this action, which renders the request burdensome and oppressive.
> 13 Kaikai Kiki further objects to this request on the basis that it is not reasonably
> 14 calculated to lead to the discovery of admissible evidence. KaiKai Kiki also objects to
> 15 this request on the basis that it seeks documents protected from discovery by the
> 16 attorney-client privilege and attorney work product doctrine.

Here, Kaikai Kiki asserted the same exact objection as for the other requests, with the sole addition of the last sentence with purports to assert a specific objection based on the attorney-client privilege and attorney work product doctrine.2

The sole exception to the solid stone wall put up by Kaikai Kiki was its response to Request no. 11:

> 4  **RESPONSE TO NO. 11**:
> 5  Kaikai Kiki reasserts the general objections stated above as though set forth at
> 6  length. In addition, Kaikai Kiki specifically objects to this request on the basis that it
> 7  is vague and overbroad as to its scope, burdensome and oppressive.
> 8  Subject to and without waiving the foregoing general and specific objections,
> 9  Kaikai Kiki responds that, subject to the parties entering into an appropriate protective
> 10 order, Kaikai Kiki will produce non-privileged documents in its possession, custody
> 11 or control that are responsive to this request.

## II.         ARTHUR'S EFFORTS TO RESOLVE THIS DISPUTE INFORMALLY

On August 25, 2010, counsel for Arthur conferred with Kaikai Kiki's counsel by telephone. Engel Decl. ¶.8 Glynn Decl. ¶3. During this conference, Kaikai Kiki's counsel simply repeated its "offer" that it would provide Arthur with a video depicting Murakami signing the Multiples,

---

2 The fact that Kaikai Kiki specifically objected to Requests Nos. 41-45, 47 & 54 on privilege grounds appears to be an admission that the "general objections" based on the same privileges have absolutely no merit.

together with a declaration purporting to authenticate that video, but if, and only if, Arthur would withdraw the subpoena and agree not to seek documents or testimony from Kaikai Kiki.  Engel Decl. ¶8; Glynn Decl. ¶4. Arthur's counsel once again rejected that insulting offer.  Engel Decl. ¶8. Glynn Decl. ¶5.

Several times during the pre-filing conference, Arthur's counsel asked Kaikai Kiki's counsel whether Kaikai Kiki would even *consider* complying with the *Kaikai Kiki Subpoena* on any level.  But, Kaikai Kiki's counsel refused each request.  Engel Decl. ¶9 & Exhibit B; Glynn Decl. ¶6.  Kaikai Kiki's counsel showed no indication that Kaikai Kiki would ever voluntarily comply with the *Kaikai Kiki Subpoena* on any level. Engel Decl. ¶9. Glynn Decl. ¶6.

At no time during the pre-filing conference, or otherwise, did Kaikai Kiki's counsel provide factual support for any of the objections asserted, including those based on privilege. Engel Decl. ¶11. Glynn Decl. ¶7. Nor did Kaikai Kiki's counsel provide any legal authority that supported any of the objections. Engel Decl. ¶12.  Glynn Decl. ¶8. And, not once during the pre-filing conference, or otherwise, did Kaikai Kiki's counsel ever agree to provide Arthur's counsel with a privilege log. Engel Decl. ¶13.  Glynn Decl. ¶9.

During the conference, Kaikai Kiki's counsel offered nothing more than a very broad relevance objection and refused to address any specific request to which there was a good faith objection. In the end, the 90 minute conference resolved nothing, prompting the need for this motion. Glynn Decl. ¶10. The information, documents and testimony sought from this entity is necessary as it is reasonably calculated to lead to the discovery of admissible evidence. Kaikai Kiki, through its counsel, has refused to respond in good faith to these proper, targeted, limited demands by relying on a blanket objection of relevance. Glynn Decl. ¶11.

**III.     THE COURT SHOULD COMPEL KAIKAI KIKI TO DESIGNATE AND PRODUCE FOR DEPOSITION ONE OR MORE OFFICERS, DIRECTORS, MANAGING AGENTS OR OTHER PERSONS WHO CONSENT TO TESTIFY ON ITS BEHALF ABOUT MATTERS 3, 6, 9, 10, 13-23, 25, 28-31, 62, 64, 66, 68, 70, 72, 75-77 & 79 (THE "MATTERS").**

*1.   The Matters are relevant in a discovery sense.*

Rule 26, Fed. R. Civ. Proc, provides, in pertinent part, that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."   In this context, "admissible evidence" is not limited to being admissible at trial as part of the plaintiff's case-in-chief, but includes evidence that may be used for impeachment purposes and, thus, relate to the credibility of any witness.  *Paulsen v. Case Corp.*, *supra*, 168 F.R.D. at 289.   "A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of this action. Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of this action." *Paulsen v. Case Corp.*, 168 F.R.D. 285, 288 (C.D. Cal. 1996) *quoting Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D. Kan. 1993).

Moreover, relevancy is to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also* Fed.R.Civ.P. 26(b)(1). Discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.  See *Hickman v. Taylor*, 329 U.S. 495, 500–501 (1947).   "Nor is discovery limited to the merits of a case, for a variety of fact–oriented issues may arise during litigation that are not related to the merits."  WRIGHT, MILLER & KANE, 8 FEDERAL PRACTICE & PROCEDURE § 2008 (3rd. Ed. 2010).

Applying this extremely broad standard, the Matters are definitely relevant in a discovery

sense.  They all bear one or more issues in this case.  Matters 3 and 6 each bear on whether the Multiples were deceptively marketed to Arthur and others.  Matters 9 and 10 bear on the collaboration between Louis Vuitton and Murakami, as well as their motive for deceptively marketing the Multiples.  Matters 13 through 21 bear on the truth or falsity of the facts set forth in the Marc Mauclair declaration.  Matters 22, 23, 25, 28, 29, 30 and 31 bear on Arthur's claims under the Fine Prints Act, Unfair Competition Law, and Louis Vuitton's defenses thereto. Matters 43 to 51 are related to the misleading and incomplete certificates of authenticity which are at the heart of this case.  Matters 52 through 61 bear on the misleading and deceptive brochures referenced which are also at the core of the case.  Matters 62, 64, 66, 68, 70 & 72 each bear on Arthur's claims under the Fine Prints Act and Louis Vuitton's defenses thereto.  Matters 75-76 bear on the FPA and UCL claims.  Matter 77 bears on the communications which are attached as exhibits to Arthur's complaint.  And, Matter 78 bears on the issue of Kaikai Kiki's compliance with the *Kaikai Kiki Subpoena*.

Thus, each of the Matters bears directly on Arthur's claims under the Fine Prints Act and Unfair Competition Law, Louis Vuitton's defenses thereto.  Further, the Matters are relevant for impeachment purposes (Mauclair Declaration), and bear on Louis Vuitton's credibility.  Under the broad standard for relevance, the Matters are relevant in a discovery sense.

2. *Requiring Kaikai Kiki to designate and produce for deposition one or more officers, directors, managing agents, or other persons who consent to testify on its behalf about the Matters will not subject Kaikai Kiki to undue burden or expense.*

Kaikai Kiki has not presented any evidence in support of its claim that designating and producing witnesses to be examined concerning the Matters would subject it to undue burden or expense.  That is because requiring Kaikai Kiki to do so would not subject it to undue burden or

expense.

Arthur noticed Kaikai Kiki's deposition for a location which was calculated to be convenient for Kaikai Kiki. This location, a local court reporting agency's offices, is located a reasonable distance from Kaikai Kiki's offices. Arthur is willing to have the deposition take place at Kaikai Kiki's offices, should they so desire. Thus, the burden and expense of designating and producing one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf about the Matters will not subject Kaikai Kiki to undue burden or expense.

Arthur is only asking the Court to compel Kaikai Kiki to designate and produce witnesses on 50 of the 79 topics listed in the *Kaikai Kiki Subpoena*. Although Arthur believes that the 29 separate matters which he has effectively withdrawn are each relevant and were properly included in the *Kaikai Kiki Subpoena*, he has withdrawn them as part of his ongoing effort to avoid subjecting Kaikai Kiki to undue burden or expense while still obtaining the discovery he need to effectively prepare his case for trial. As established above, each of the Matters is relevant in a discovery sense.

**A. The Court should compel Kaikai Kiki to bring to the deposition the documents, electronically stored information, and objects which were identified in requests for production nos. 1-27, 39-52 & 54 (the "Requests").**

  1. *KaiKai Kiki's Assertions of Privilege Are Inadequate*.

Rule 45, Fed. R. Civ. Proc, provides, in pertinent part:

> (A) *Information Withheld*. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
>
>   (i) expressly make the claim; and
>
>   (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Fed. R. Civ. Proc, Rule 45(d)(2)(A).   Kaikai Kiki has never done so.

E.D.N.Y. Local Civil Rule 26.2 provides, in pertinent part:

> **Local Civil Rule 26.2. Assertion of Claim of Privilege**
>
> (a) Where a claim of privilege is asserted in objecting to any means of discovery or disclosure, including but not limited to a deposition, and an answer is not provided on the basis of such assertion,
>
> (1) The attorney asserting the privilege shall identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and
>
> (2) The following information shall be provided in the objection, unless divulgence
>
> (ii) the general subject matter of the document; (iii) the date of the document; and
>
> (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each
>     . . .
> (c) Where a claim of privilege is asserted in response to discovery or disclosure other than a deposition, and information is not provided on the basis of such assertion, the information set forth disclosure, unless otherwise ordered by the court.

Kaikai Kiki did not comply with Local Civil Rule 26.2 either.

Kaikai Kiki's "general objections" based on the attorney-client or attorney work-product privileges and Kaikai Kiki's alleged "right of privacy" do not satisfy this rule, and are tantamount to no objection at all.  The same goes for those instances when Kaikai Kiki asserted "specific objections" based on non-specific, conclusory invocations of the attorney-client privilege and the work-product doctrine.  KaiKai Kiki has not identified a single document that is being withheld

pursuant to a claim of privilege. Not in the *Written Objections*. Not in a privilege log. Nor in any other document. Further, Kaikai Kiki has not even attempted to meet its burden of showing with competent evidence that any particular item withheld is actually shielded from discovery under one or more asserted privilege. And, KaiKai Kiki has failed to explain the factual and legal reasons why any particular item is being validly withheld pursuant to a claim of privilege.

It is well settled that boilerplate objections or blanket refusals in response to a request for production of documents like Kaikai Kiki's are insufficient to assert a privilege. *Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court*, 408 F.3d 1142, 1147 (9th Cir. 2005); *Hoot Wing, LLC v. RSM McGladrey Financial*, 2009 U.S. Dist. Lexis 103045(S.D.C.A.)

Thus, KaiKai Kiki has effectively *waived* any objection it might have had on the basis of any asserted privilege.

2. *The Requests are not "burdensome and oppressive".*

It is well-established that the burden is on the party objecting to compliance with a request for production to show grounds for failing to provide the requested discovery. The responding party cannot simply invoke generalized objections; rather, with respect to each of the propounding party's discovery requests, the responding party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is . . . overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. In addition, a responding party must explain and/or establish the basis for its objection at the time it asserts its objection." *Santa Monica Baykeeper v. Kramer Metals, Inc.*, 2009 U.S. Dist. LEXIS 69130 (C.D. Cal. Feb. 27, 2009)(internal citations omitted). *See also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir.1990) (objections that document

requests were overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir.1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable); *A. Farber & Partners, Inc.*, 234 F.R.D. 186, 188 ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper-especially when a party fails to submit any evidentiary declarations supporting such objections.").

"An objection to a Rule 34 request must clearly set forth the specifics of the objection and how that objection relates to the documents being demanded. Generic, non-specific objections are improper." 7-34 Moore's Federal Practice – Civil § 34.13 (2010 ed.)   Courts uniformly hold that "boilerplate", non-specific "general objections" are improper, and do not provide adequate justification to refuse to comply with a request. *See Wolk v. Green*, 2007 U.S. Dist. LEXIS 83148, 2007 WL 3203050, at *1 n. 1 (N.D. Cal. Oct. 29, 2007) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."); *United States v. City & County of San Francisco*, 2009 U.S. Dist. LEXIS 22662 (E.D. Cal. Mar. 9, 2009)( ". . . the problems in responding with boilerplate objections and qualified responses- it is impossible to determine whether the responding party is withholding any documents based upon the stated objections."); *Santa Monica Baykeeper v. Kramer Metals, Inc.*, 2009 U.S. Dist. LEXIS 69130, 4-5 (C.D. Cal. Feb. 27, 2009) (Boilerplate objections, which are set forth in response to every discovery request, are too general to merit consideration.); *Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D. Cal. 1996); *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592-93 (W.D. N.Y. 1996) (general objections that discovery request was overbroad, vague and unduly burdensome were not sufficiently specific to allow court to ascertain objectionable character of

discovery request and were improper).

KaiKai Kiki's objections fail utterly to meet this stringent standard.  Kaikai Kiki's objection provides no substantive information.   Kaikai Kiki doesn't support its claim of burden or oppression with any specifics whatsoever.   Nor has Kaikai Kiki bothered to explain what makes the Requests, and each of them, "burdensome" or "oppressive".

Furthermore, KaiKai Kiki predicates the "burdensome and oppressive" objection on the meritless general assertion that the <u>none</u> of the Requests, except for Request no. 11, seek information that is relevant in a discovery sense.  As established above, this contention is obviously false.

Thus, there no merit to Kaikai Kiki's "burdensome and oppressive" objections and they ought to be overruled.

   3.   *The Requests are not "vague".*

"The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases."*Thomas v. Cate*, 2010 U.S. Dist. LEXIS 21750 (E.D. Cal. Feb. 19, 2010)(internal quotations and citations omitted).  Kaikai Kiki has not done so.

Further, when crafting the Requests, Arthur used the definitions and rules of construction that are set forth in Local Civil Rule 26.3 so as to avoid this very brand of mischief.

Thus, there is no merit to Kaikai Kiki's objections to the Requests on the grounds that they are "vague."

   4.   *The Requests are not "overbroad as to their scope".*

The Requests at issue in this motion are not "overbroad in their scope".   Requests nos. 1-9

merely seek documents that would support (or contradict) the factual assertions about the Multiples that were made in the in the Declaration of Marc Mauclair. Requests nos. 12-19 seek only documents that would reveal the information that the Fine Prints Act required Louis Vuitton to disclose to potential purchasers of the Multiples. Requests nos. 20-27 are limited to information concerning the manner in which the Multiples were sold, marketed, or made, and to Murakami's personal involvement in the same. Requests nos. 39 and 40 are restricted to the misleading Certificates of Authenticity and the Brochures that were handed out exclusively at MOCA in connection with the sale of the Multiples. Requests 41-45 are restricted to Arthur and his actions which are at the core of this case. Requests 46-48 are restricted to the narrow issue of the legal and ethical duties, including those under the Fine Prints Act, to make full disclosure in connection with the sale of multiples. Requests 49-52 seek only photographs and/or audiovisual recordings of the temporary Louis Vuitton boutique set up in MOCA, the Multiples, or Arthur. Finally, Request 54 seeks only communications that pertain to this lawsuit, which would tend to demonstrate, among others, the collusion between Kaikai Kiki and Louis Vuitton, and between Kaikai Kiki and MOCA.

Thus, the Requests are sufficiently narrow. They only seek relevant information. Kaikai Kiki has not provide any facts which would suggest otherwise. Therefore, Kaikai Kiki's objection to the Requests as being "overbroad" lacks merit and should be overruled.

> 5. *Regarding Request no. 11, Kaikai Kiki must either object to compliance or comply with the command to produce the specified documents.*

Rule 45, Fed. R. Civ. Proc., provides, in pertinent part:

> "A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written

objection **to inspecting, copying, testing or sampling** any or all of the materials . . . or **to producing** electronically stored information in the form or forms requested." *FRCP Rule 45(c)(2)(B)(emphasis added).* Thus, by its own terms, Rule 45 only authorizes KaiKai Kiki to object to *compliance* with the command to produce the listed materials or ESI. It logically follows that Rule 45 only authorizes written objections that state valid grounds for refusing to produce the specified documents or ESI. Under Rule 45, KaiKai Kiki is required to either comply with the command to produce the documents and ESI or object to compliance, but it cannot do not both simultaneously.

The same rule applies in the context of Rule 34 inspection demands: the responding party must produce, allow inspection, or state objection. 7-34 Moore's Federal Practice – Civil § 34.13(2)(a) (2009 ed.) This makes sense, because if one does not object to complying with the subpoena, then there is no valid purpose for objecting to it.

Kaikai Kiki's response to Request No. 11 is a masterwork of double-speak. On one hand, KaiKai Kiki vaguely states it "will comply" by producing some unidentified documents, but then refuses to produce a single document. KaiKai Kiki hedges by stating that it "will comply", but only "subject to" and "without waiving" five "general objections" that do not set forth the specifics of the objections or explain how the objections relate to the documents being demanded.

Kaikai Kiki cannot have it both ways by objecting to the whole request and then also stating that it will comply with part of the request "subject to" a those objections. KaiKai Kiki's practice of stating that it will comply with part or all of a request "subject to and without waiving" a litany of boilerplate objections is unfair and prejudicial because

Arthur has no way of knowing whether Kaikai Kiki is actually producing all of the documents or ESI requested.

6. *Regarding Request no. 11, Kaikai Kiki has not demonstrated the requisite "good cause" for the issuance of a protective order.*

Rule 26 creates a presumption in favor of freedom of dissemination which is real and rooted, in part, in the First Amendment to the US Constitution. *Humboldt Baykeeper v. Union Pac. R.R.*, 244 F.R.D. 560, 563 (N.D. Cal. 2007). "Placed by the law on the scales before the trial court begins any "balancing," this presumption pre-weights the scales against restricting a party's lawful use or dissemination of discovered information." *Id.* The presumption in favor of freedom of dissemination "cannot be outweighed by merely speculative threats of harm to other interests. Instead, the proponent of a protective order must demonstrate that the risk of disclosure is real and that if the disclosure occurred it would cause an identifiable, significant harm. *Id. quoting Foltz v. State Farm*, 331 F.3d 1122, 1131 (9th Cir. 2003). See also *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994) (endorsing the notion that, to make the kind of "good cause" showing that is necessary to justify issuance of a protective order, the moving party must demonstrate that "disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. . . . [citation omitted] 'Broad allegations of harm, unsupported by specific examples or articulated reasoning,' do not support a good cause showing." [citation omitted]). Kaikai Kiki has made no such showing.

Further, Kaikai Kiki's refusal to produce the " documents in its possession, custody and control that are responsive to this request [no. 11] unless the parties "enter into an appropriate protective order" falls far short of justifying its non-compliance with this valid request for production. Nowhere in its *Written Objections* does Kaikai Kiki even attempt to identify the

admittedly responsive documents it wants the Court to protect, let alone present facts and argument that would establish the "good cause" that must be found to exist before this Court may lawfully issue a protective order.

Kaikai Kiki has not met its burden of establishing that good cause exists for the issuance of a protective order that would seriously invade and violate Plaintiff's and Plaintiff's counsel's rights under the First Amendment.

## CONCLUSION

Denial of this discovery will result in actual and substantial prejudice to Arthur.

WHEREFORE it is respectfully requested that this Court now issue an Order compelling the non-party witness Kaikai Kiki Co., LTD ("Kaikai Kiki") to comply with certain portions of a properly issued subpoena and appear for a deposition pursuant to Fed. R. Civ. P. 45, and for such other and further relief as this Court may deem just and proper.

Dated: Los Angeles, CA
September 14, 2010

_____
Daniel Engel